**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

_____
                                                    :
Tracy Rolfe                                      :        CIVIL ACTION NO:
                                                    :
          Plaintiff,                             :
v.                                                 :
                                                    :
Lawrence & Memorial Hospital          :
                                                    :
          Defendants.                          :
                                                    :        January 19, 2010
_____

**COMPLAINT**

I.      **INTRODUCTION**

        1.      The plaintiff, Tracy Rolfe, brings this action against the defendant, Lawrence &

Memorial Hospital, alleging that the defendants violated the Americans with Disabilities Act

(ADA), 42 U.S.C. §12101, *et seq.*, and the Connecticut Fair Employment Practices Act,

Conn.Gen.Stat. §46a-58, *et seq.*  The plaintiff also alleges a Connecticut tort claim of

intentional infliction of emotional distress.  The plaintiff's claims arise out of her employment

and termination of employment by the defendant.  The plaintiff seeks injunctive relief,

including reinstatement and restoration of seniority and benefits, and monetary damages,

including lost wages and benefits of employment, compensatory damages, punitive damages,

and her reasonable attorney's fees and costs.

II.     **JURISDICTION AND VENUE**

        2.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331 and §1343.

With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28

U.S.C. §1367, in that the state law claims are so related to the federal claims that they form

part of the same case or controversy under Article III of the United States Constitution.

3.      Venue in this district is appropriate pursuant to 28 U.S.C. §1391, because this is the district in which all of the parties reside and in which the cause of action arose.

4.      The plaintiff filed an administrative charge with the Equal Employment Opportunity Commission (EEOC) on or about January 17, 2008.  On or about January 4, 2010, the plaintiff received a "right to sue" letter from the EEOC.  The plaintiff has fulfilled all administrative prerequisites to this action.

5.      The plaintiff filed an administrative charge with the Connecticut Commission on Human Rights and Opportunities (CHRO) on or about January 17, 2008.  On or about January 4, 2010, the plaintiff received a release of jurisdiction letter from the CHRO.  The plaintiff has fulfilled all administrative prerequisites to this action.

## III.    THE PARTIES

6.      The plaintiff is Tracy Rolfe (hereinafter, "the plaintiff," or "Rolfe"), a person residing in East Lyme, Connecticut.  At all times relevant to this Complaint, the plaintiff was an employee of the defendant within the meaning of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. §46a-58, *et seq.*.

7.      The defendant is Lawrence & Memorial Hospital, a Connecticut corporation with a principal place of business at 365 Montauk Avenue, New London, Connecticut.  At all times relevant to this Complaint, the defendant was an employer of the plaintiff within the meaning of the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq.*, and the Connecticut Fair Employment Practices Act, Conn.Gen.Stat. §46a-58, *et seq.*.

8.      The defendant employs more than fifty employees.

## IV.    THE FACTS

9.      The plaintiff is a Registered Nurse, and was employed by the defendant since in or about 1998.

10.     In or about September 2004, the plaintiff was diagnosed with Multiple Sclerosis.

11.     Multiple Sclerosis, or MS, is a chronic, unpredictable neurological disease that affects the central nervous system.  As a result of MS, the plaintiff is substantially limited in one or more major life activities, including the major life activity of walking.

12.     Around the time of her diagnosis with MS. The plaintiff suffered from symptoms that included partial paralysis and blindness.  As a result of these symptoms she was unable to work and was placed on Family and Medical Leave by the defendant.

13.     Over time these symptoms decreased, and the plaintiff was able to return to work on a part-time, light-duty schedule.

14.     By on or about August 1, 2006, the plaintiff had returned to full time work for the defendant.

15.     Even after the plaintiff had returned to work, she continued to be substantially limited in the major life activity of walking, inasmuch as she continued to have physical limitations in her ability to walk, including the length of time that she could be on her feet and the length of time that she could spend walking without experiencing pain and severe fatigue.

16.     The plaintiff's job title and the position that she held was Admissions Nurse.  The plaintiff had applied for the position after consultation with the defendant about finding a position consistent with the physical limitations associated with her MS diagnosis.

17.     From the time that the plaintiff began working in the Admissions Nurse position up until October 2007, she performed almost all of her regular duties in the defendant's Emergency Department (ED).

18.     From the time that the plaintiff started working in the Admissions Nurse position up until October 2007, she was able to perform most of her duties while seated in an area of the Emergency Department.

19.     On or about August 26, 2007, the plaintiff's nursing manager Patricia Orce sent

her an email telling her to pay "special attention" to an article in the MS Society newsletter about nominations for an "employer of the year" award.

20.     The plaintiff understood Orce's email as a suggestion that she should nominate the Defendant for an employer of the year award by the MS Society.

21.     The plaintiff was surprised and upset by Orce's email.  After the plaintiff had received her diagnosis, when she was well enough to begin working again, she had difficulty getting the defendant  to accommodate her physical limitations by placing her in a position that did not require extensive walking or being on her feet.

22.     Subsequently, the plaintiff spoke with Orce's clinical coordinator, Deb Merola, about the email.  She asked Merola if Orce was joking, and if she had any idea how much of a struggle the plaintiff had with the defendant to get back to work in a position that she was physically able to do because of my disability.  The plaintiff told Merola that she could not believe that Orce would even suggest that she nominate the defendant for an award.

23.     Orce called the plaintiff later that day and told her that "Now that you've spent a half hour bitching to Deb, I get it."  The plaintiff asked her again if she was joking and stated that there was no way she would nominate the hospital for an award.

24.     Within approximately one month of the plaintiff' conversation with Orce in which she refused to nominate the defendant for an employer of the year award by the MS Society, she began to be subjected to different and adverse treatment by the defendant.

25.     Beginning in or about October 2007, the defendant began assigning the plaintiff to float to various hospital units to work as a staff nurse for most of her shift, or to work on nursing units as "helping hands," or to do admissions on units rather than in the Emergency Department.

26.     As an admissions nurse, the plaintiff's regular shift was 1pm to 9:30pm.  The regular shift for float nurses was 2:45pm to 11:15pm.

27.     Initially, the defendant assigned the plaintiff to work as a staff nurse on the units even though she had not been fully oriented to the units in the manner in which "float" nurses are oriented in approximately two years.  Only after she complained that this was an unsafe practice, was the plaintiff given orientation.

28.     Assignments to work on the units, especially assignments to work as a staff nurse on the units, were physically exhausting for the plaintiff and often by the end of the day she would be in great physical pain.

29.     The plaintiff told Orce on more than one occasion that sending her to work on the units was causing her a lot of physical pain, and that sometimes by the time she got home after her shift she would be crying because of the pain.

30.     Orce continued to allow the plaintiff to be assigned to the units.

31.     On or about November 9, 2007, the plaintiff came to work using a cane.

32.     The nursing supervisor, Nancy Robbins, observed the plaintiff using a cane at the beginning of the day.  Robbins asked the plaintiff if she was okay and the plaintiff told her that she was.  Robbins made no other comment on plaintiff using a cane at work.

33.     On that day the plaintiff participated in a meeting and was then assigned to care for patients on the overflow unit.

34.     After the plaintiff had completed her work on the overflow unit. Robbins approached her and insisted that because she was using a cane she had to report to the employee health doctor.

35.     After November 9, the defendant continued to assign the plaintiff to work as a staff nurse several times a week.  As a result, she was often in a great deal of pain at the end of her shift, and was sometimes not able to work the next day.

36.     From on or about August 1, 2006, until on or about October 9, 2007, the plaintiff was not assigned to work on the units as a staff nurse.  The plaintiff was occasionally

assigned as "helping hands" on units for no more than a few hours, and for the remainder of her shift she did admissions or performed other duties.

37. After on or about October 9, 2007, and continuing while she held that position, on those days when the defendant assigned the plaintiff to work on the units as a staff nurse, the plaintiff was typically assigned from 2:45pm until the end of her shift.

38. After on or about October 9, 2007, and continuing while she held that position, the plaintiff was required to "check in" with Robbins or the staffing office every day when she reported to work. The plaintiff was not previously required to do so.

39. The change in the plaintiff's work assignments and duties was motivated by the defendant's retaliatory animus, because the plaintiff had refused to nominate the defendant for an Employer of the Year award as described above.

40. The change in the plaintiff's work assignments and duties failed to reasonably accommodate her disability.

41. The change in the plaintiff's work assignments and duties was intended to and did cause her to experience pain, suffering and physical and emotional distress.

42. On or about April 1, 2008, the plaintiff applied for and took a transfer to a part time (24 hour a week) nursing staff position in Orthopedics. The plaintiff was forced to take the position because she was unable to continue to perform the duties of her full time position as they had been altered by the defendant beginning in or about October 2007. Even so, the duties of this position were more physically strenuous, including requiring more standing and walking, than the Admissions Nurse position as it had existed in the period from in or about August 2006, until in or about October 2007.

43. On or about July 25, 2008, the defendant denied the plaintiff a transfer to an open position that would have been consistent with her physical limitations and would have reasonably accommodated her disability.

44.     On or about July 6, 2008, the defendant again denied the plaintiff a transfer to an open position that would have been consistent with her physical limitations and would have reasonably accommodated her disability.

45.     In or about April 2009, the plaintiff was forced to go out on a medical leave of absence from her employment because she could no longer continue to perform the duties of her staff nurse position in Orthopedics.  At that time the plaintiff would still have been able to perform the duties of her job as an Admissions Nurse as that job had existed in the period from in or about August 2006 until in or about October 2007.

46.     The plaintiff's protected medical leave of absence under the federal Family and Medical Leave Act and/or the Connecticut Family and Medical Leave Act expired on or about July 7, 2009.  The plaintiff was told by the defendant that she would be allowed to continue on a medical leave of absence beyond that date but that her ability to return to her job would not be guaranteed.

47.     In or about July 2009, the defendant terminated the plaintiff's employment.

## V.      COUNT ONE: DISCRIMINATION FOR OPPOSING A DISCRIMINATORY PRACTICE (CONN. GEN.STAT. _46A-60(a)(4))

1.     The plaintiff restates, realleges and incorporates by reference paragraphs 1 through 47, above.

48.     By refusing and making known her refusal to nominate the defendant for an Employer of the Year award and stating her reasons for such refusal to the defendant, as described above, the plaintiff opposed a discriminatory practice of the defendant.

49.     Defendant's conduct, including changing the plaintiff's duties and the requirements of her job, constitutes discrimination for the plaintiff's opposition to a discriminatory practice in violation of Connecticut General Statutes §46a-60(a)(4).

50.     Defendant's unlawful conduct was in willful disregard of the plaintiff's clearly established rights under Connecticut law.

51.     As a result of the defendant's unlawful conduct, the plaintiff suffered and continues to suffer a loss of wages and benefits from employment, physical pain, and emotional distress, pain and suffering.

## VI.     COUNT TWO: DISABILITY DISCRIMINATION / REFUSAL TO ACCOMMODATE (CONN. GEN. STAT. _46a-60(a)(1))

1.     The plaintiff restates, realleges and incorporates by reference paragraphs 1 through 51, above.

52.     The defendant was aware of the plaintiff's disability and the reasonable accommodations that she required because of her disability in order to perform the duties of her job.

53.     Defendant's conduct, including changing the plaintiff's duties and the requirements of her job, constituted a refusal to accommodate the plaintiff's disability, and therefore discrimination on account of her disability in violation of Connecticut General Statutes §46(a)(1).

54.     Defendant's unlawful conduct was in willful disregard of the plaintiff's clearly established rights under Connecticut law.

55.     As a result of the defendant's unlawful conduct, the plaintiff suffered and continues to suffer a loss of wages and benefits from employment, physical pain, and emotional distress, pain and suffering.

## VII.    COUNT THREE: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1.     The plaintiff restates, realleges and incorporates by reference paragraphs 1 through 55, above.

56.     The defendant knew or should have known that its conduct in changing the plaintiff's duties and the requirements of her job, and refusing to permit her to a transfer to a position consistent with her physical limitations would be likely to cause her to suffer emotional distress.

57.     The defendant's conduct as described above was extreme and outraregous.

58.     The defendant's conduct as described above caused the plaintiff to suffer severe emotional distress.

## IX.     COUNT FIVE: RETALIATION FOR OPPOSING A DISCRIMINATION PRACTICE (AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12203)

1.     The plaintiff restates, realleges and incorporates by reference paragraphs 1 through 58, above.

59.     By refusing and making known her refusal to nominate the defendant for an Employer of the Year award and stating her reasons for such refusal to the defendant, as described above, the plaintiff opposed a discriminatory practice of the defendant.

60.     Defendant's conduct, including changing the plaintiff's duties and the requirements of her job, constitutes discrimination for the plaintiff's opposition to a discriminatory practice in violation of the Americans with Disabiltities Act, §12203.

61.     Defendant's unlawful conduct was in willful disregard of the plaintiff's clearly established rights under federal law.

62.     As a result of the defendant's unlawful conduct, the plaintiff suffered and continues to suffer a loss of wages and benefits from employment, physical pain, and emotional distress, pain and suffering.

## IX.     COUNT FOUR: DISABILITY DISCRIMINATION / REFUSAL TO ACCOMMODATE (AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §12112)

1.      The plaintiff restates, realleges and incorporates by reference paragraphs 1 through 62, above.

63.     The defendant was aware of the plaintiff's disability and the reasonable accommodations that she required because of her disability in order to perform the duties of her job.

64.     Defendant's conduct, including changing the plaintiff's duties and the requirements of her job, constituted a refusal to accommodate the plaintiff's disability, and therefore discrimination on account of her disability in violation of the Americans with Disabilities Act, 42 U.S.C. §12112.

65.     Defendant's unlawful conduct was in willful disregard of the plaintiff's clearly established rights under federal law.

66.     As a result of the defendant's unlawful conduct, the plaintiff suffered and continues to suffer a loss of wages and benefits from employment, physical pain, and emotional distress, pain and suffering.

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, the plaintiff requests that this Court:

1.      Order the defendant to reinstate the plaintiff to the position she would have reached absent the defendant's unlawful conduct or to a substantially similar position;

2.      Order the defendant to cease and desist from discriminating against or retaliating against the plaintiff or otherwise interfering with his rights;

3.      Order the defendant to make the plaintiff whole for all lost wages and benefits, with interest;

4.      Award the plaintiff compensatory damages, including damages for the plaintiff's physical pain and pain, suffering and emotional distress;

6.      Award the plaintiff punitive damages;

7.      Award the plaintiff her reasonable attorney's fees and costs;

8.      Award the plaintiff such other legal and equitable relief that the Court deems appropriate.

## REQUEST FOR TRIAL BY JURY

The plaintiff respectfully requests a trial by jury as to all claims to which she is entitled.

THE PLAINTIFF,

BY: /s/_ Peter Goselin
    Peter Goselin ct16074
    Livingston, Adler, Pulda,
    Meiklejohn & Kelly, P.C.
    557 Prospect Avenue
    Hartford, CT 06105-2292
    (860) 233-9821